UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERRY WISE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:16 CV 8 (JMB) |
| ) | |
| IAN WALLACE, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Jerry Wise for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.    Procedural Background**

Petitioner Jerry Wise is presently incarcerated at the Southeast Correctional Center pursuant to the judgment and sentence of the Circuit Court of Saint Louis City. On December 8, 2011, a jury convicted petitioner of one count of forcible rape (Count I), in violation of § 566.030;[1] one count of forcible sodomy (Count III), in violation of § 566.060; one count of first-degree armed robbery (Count V), in violation of § 569.020,[2] and three counts of armed criminal action (Counts II, IV, and VI), in violation of § 571.015. Verdicts [Doc. # 21-1 at 87-92].[3] Petitioner waived his right to sentencing by the jury and, on March 8, 2012, the trial court sentenced petitioner to concurrent terms of imprisonment for 25 years on Count I, 20 years on

---

[1] All statutory references are to Mo. Rev. Stat.

[2] Section 569.020 was transferred to § 570.023, effective Jan. 1, 2017.

[3] Materials in the record are cited with the CM/ECF document number and the page number that appears in the red header.

Count II, 25 years on Count III, and 20 years on Count IV; and 20 years on Count V and Count VI, to be served consecutively to Counts I through IV, and concurrently with one another. Judgment [Doc. # 21-1 at 109-14]. The Missouri Court of Appeals affirmed petitioner's convictions and sentences on direct appeal on May 7, 2016. State v. Wise, No. ED98216 (May 7, 2016) [Doc. # 21-4]. Petitioner's motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied following an evidentiary hearing. Findings of Fact and Conc. of Law [Doc. # 21-5 at 44-52]. On October 20, 2015, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Wise v. State, No. ED102367 (Oct. 20, 2015) [Doc. # 21-9]. Petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254 on January 4, 2016.

## II.  Factual Background

The victim in this case, a woman identified as T.R., testified that she left her grandfather's home at 4:30 in the afternoon of January 11, 2010, to walk the dozen blocks to her home. It was cold and there was snow on the ground, so when a man in a car pulled up and offered her a ride, she accepted. She got in the front seat and asked the driver, later identified as petitioner, to drop her off at an intersection near her home. She testified that she was looking at one of her two cellphones when she realized that the driver had pulled into an alley. He stopped the car in a vacant lot. When one of her phones rang, he became enraged with her and accused her of "setting him up." He then held a kitchen knife to her neck and demanded that she perform oral sex. She complied, but he then told her to pull down her pants and turn around in the front passenger seat. She testified that petitioner got behind her and raped her while holding the knife to her neck. Once he was finished, he opened the car door and told her to get out. She reached for her cellphones and gloves on the dashboard but he slashed the knife toward her. She jumped

out of the car and he drove away. She testified that she ran behind the car, screaming for help and trying to memorize the license plate.

Police officer Matthew Frichtl testified that he and his partner were in a police car on a nearby street. T.R. ran toward their vehicle, waving her arms and appearing frantic. Her pants were undone and she was holding them up as she ran toward them. Officer Frichtl testified that T.R. told him she had been raped but she was initially so upset that she could not provide any details of the incident. Eventually, T.R. told a female officer that she was raped by was a an older black man whom she described as shorter, and bald with a distinctive body odor. She gave a vague description of the car and partial license plate information. T.R. was then taken to an emergency room where Kathryn Howard, R.N., performed a sexual assault examination. Nurse Howard testified at trial that T.R. was very upset. She also testified that, on examination, she found no evidence of physical trauma. She collected swabs of seminal fluid found on T.R.'s body which DNA testing matched to petitioner.

Officer Frichtl testified that the day after T.R.'s assault, he and his partner saw a car with a license plate similar to T.R.'s description. They ran the license plate and learned it was stolen and so directed the driver, later identified as petitioner, to pull over and step out of the car. Officer Frichtl testified that he saw a large knife that matched T.R's description sticking up from the driver's door compartment. He also found T.R.'s cellphones and gloves in the car. Petitioner was handcuffed and placed in the patrol car. T.R. was brought to the scene to see if she could identify the car. Officer Frichtl testified that she began screaming when she saw the car, identifying it as the vehicle in which she was raped.

Petitioner testified on his own behalf. He stated that he was driving in his car when T.R. and another woman, whom he described as a transvestite, beckoned to him. He pulled over and

invited them in to the car. The three then went searching for crack cocaine to purchase. Petitioner testified that after they bought and smoked the crack cocaine, T.R. agreed to have sex with him for money. Petitioner dropped the other woman off and drove to an alley that T.R. directed him to. Petitioner said he placed $30 on the dashboard. When he was unable to maintain an erection, T.R. displayed a "rug cutter" and grabbed for the money. They struggled and T.R. jumped from the car. Petitioner drove off, not knowing that T.R.'s cellphones and gloves were in the car.[4]

At the sentencing hearing, the prosecutor offered the testimony of three witnesses. First, Officer Frichtl testified that on the day after he and his partner encountered T.R., they were approached by a woman who told them that she had been raped several months earlier under circumstances strikingly similar to those T.R. described. According to this woman, her assailant was an older, chunkier, balding black man who held a steak knife to her throat. She told the officers she had seen the assailant's vehicle in the area and was afraid he would kill someone. [Doc. # 21 at 481-82]. Next, Lieutenant Mike McAteer testified that, on September 22, 2002, he took a report from a woman who accepted a ride from a man. After she was in the car, the man struck her in the face with a handgun and accused her of wearing a wire. He searched her clothing and then sexually assaulted her. The victim went to an emergency room and underwent a sexual assault examination. Seven years after the assault, the Combined DNA Index System (CODIS) identified petitioner as a match for the September 2002 assault. Id. at 485-87. On October 10, 2002, a second woman reported to Lt. McAteer that a man later identified as petitioner talked her into getting into his car, where he displayed a handgun and forced her to engage in intercourse. Based on the information this woman was able to provide, Lt. McAteer

---

[4] A recording of petitioner's interview with the police was played for the jury. Id. at 442-43. Petitioner apparently told the officers he took T.R.'s cell phones after an argument. [Doc. # 21-5 at 33].

identified and interviewed petitioner. He acknowledged that he had a sexual encounter with the woman but had a conflict with her when it turned out he couldn't pay her what he promised. Id. at 488-91. Finally, T.R. testified at the sentencing hearing that she no longer trusted people. Id. at 492-93. Petitioner testified on his own behalf, informing the court that he was "not this creature that these young ladies claim I am. They really participated in these acts with me." Id. at 498-99; 514-15.

The prosecuting attorney asked the court to impose consecutive life sentences, describing petitioner as a violent sexual predator. Id. at 493-96. Defense counsel argued that the court should not rely on the officers' testimony regarding petitioner's alleged assaults of other women, describing the testimony as only one version of uncharged conduct. Defense counsel also noted that petitioner had no prior felony convictions. In addition, according to a presence assessment report prepared by the Missouri Division of Probation and Parole, petitioner presented a "low to moderate risk" to reoffend and, thus, the "typical" sentence was 20 years. Id. at 497. Based on these factors, defense counsel asked the court to impose ten-year sentences on each count, with the sentences of Counts I through IV to run concurrent to one another, and the sentences on Counts V and VI to run concurrent to one another, but consecutive to the other sentences, as required by statute. Id. at 496-98. The court imposed sentences of imprisonment totaling 45 years.

Immediately after pronouncing the sentences, the trial court questioned petitioner regarding his lawyer's representation. Id. at 502-15. Petitioner identified three topics which he believed his counsel did not effectively develop on cross-examination: (1) the victim's inconsistent statements regarding where the alleged assault happened and her familiarity with the area; (2) the fact that the victim was not tested for drug use; and (3) the presence of the other

person he claimed got in his car with the victim. In addition, he complained that he had not understood that his sentences for armed criminal action would be imposed consecutively to the other offenses. The court found that petitioner received "reasonably competent" representation at all critical stages of the criminal proceedings. Id. at 517-18.

At the post-conviction hearing held on October 30, 2014, petitioner's trial counsel testified that the defense strategy was to argue that petitioner's sexual encounter with T.R. was consensual. Once they disagreed about how much money petitioner was to pay, T.R. pulled a box cutter. Petitioner forced her from the car and left the alley, not knowing that her phones were in the car. [Doc. # 21-6 at 5-7]. Counsel stated that he did not request a jury instruction for stealing as a lesser-included offense to the robbery instruction because he was seeking a full acquittal of all the charges. Id. at 7-8. When asked why he did not object to the admission of testimony at sentencing regarding other victims, counsel testified that the trial court has wide discretion regarding the admission of evidence at sentencing. Rather than challenge the admission of the testimony, counsel decided to argue that the evidence was not entitled to significant weight because none of the prior incidents resulted in a conviction. Id. at 12-15; see also 496-97 (sentencing hearing).

### III. Legal Standards

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the

7

determination of these facts must be unreasonable in light of the evidence of record. Sittner v. Bowersox, No. 4:12 CV 1156 CDP, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). A reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

8

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

## IV. Discussion

Petitioner asserts eight grounds for relief: (1) the trial court erred in allowing the police officers to testify at sentencing about uncharged prior acts; (2) trial counsel was ineffective for failing to object to the officers' testimony at sentencing; (3) trial counsel was ineffective for failing to submit an instruction on the lesser-included offense of stealing; (4) trial counsel was ineffective for failing to argue that petitioner was subjected to double jeopardy; (5) appellate counsel was ineffective for failing to argue on appeal that the prosecution failed to prove the elements of the offenses beyond a reasonable doubt; (6) trial counsel was ineffective for failing to argue that his convictions for first-degree robbery and armed criminal action violated Missouri's general cumulative punishment statute, § 556.041; (7) trial counsel was ineffective

9

for failing to object to the prosecutor's failure to disclose the criminal records of the State's witnesses; and (8) trial counsel was ineffective for failing to request a jury instruction on mistake of fact with respect to whether T.R. consented to the sexual contact.[5] Petitioner did not raise the ineffective assistance claims asserted in Grounds 4, 6, 7, and 8 in his post-conviction proceedings and so asserts them here as challenges to the performance of post-conviction counsel in an effort to excuse the procedural default under Martinez v. Ryan, 566 U.S. 1 (2012). Respondent contends that the claims asserted in Grounds 1, 2, and 5 are also procedurally defaulted and are additionally meritless.

### A. Grounds 1 and 2: Sentencing Testimony

In Ground 1, petitioner argues that the sentencing court improperly allowed Officers Frichtl and McAteer to testify about allegations of similar sexual assaults made by other women. In Ground 2, petitioner asserts that counsel should have objected to the admission of this testimony. Respondent contends that these claims are procedurally defaulted.

Although petitioner raised the claim asserted in Ground 1 on direct appeal, the claim was not preserved for appellate review as a consequence of counsel's failure to object to the testimony at the sentencing hearing. [Doc. # 21-4 at 2]. The Missouri Court of Appeals declined to exercise its discretion to review petitioner's claim for plain error and, thus the claim is procedurally defaulted. The appellate court determined that, on the face of the claim, there were not substantial grounds to believe that the trial court committed an "evident, obvious, and clear" error that resulted in manifest injustice or a miscarriage of justice. Id. at 3-4. Even if the Missouri Court of Appeals reviewed the claim for plain error, as petitioner mistakenly asserts, the claim is still defaulted before this Court. Clark v. Bertsch, 780 F.3d 873, 876 (8th Cir. 2015)

---

[5] Ground 8 is set forth for the first time in petitioner's supplemental pleading and traverse [Docs. # 13, # 14 at 58-59]; see also [Doc. # 26, response to Ground 8].

10

(holding that "the state court's discretionary plain-error review of [petitioner's] unpreserved claims cannot excuse his procedural default.").

Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). Federal habeas review of procedurally claims is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991), holding modified by Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309 (2012). In order to satisfy the fundamental miscarriage of justice exception to procedural default, a petitioner must present new reliable evidence that he is actually innocent of the crime of conviction. Storey v. Roper, 603 F.3d 507, 523-24 (8th Cir. 2010). Here, petitioner does not argue that he can satisfy either avenue to lifting the procedural bar.[6] The claim presented in Ground 1 is procedurally defaulted.

Even if properly presented, however, Ground 1 fails on the merits. A sentencing court does not run afoul of the constitution when it considers hearsay statements concerning a defendant's other crimes or misconduct. Lord v. Rasbatt, No. 09-CV-0615 MAT, 2011 WL 6934826, at *5 (W.D.N.Y. Dec. 30, 2011); see also Hili v. Sciarrotta, 140 F.3d 210, 215 (2d Cir. 1998) ("[h]earsay information may unquestionably be used in the discretion of a sentencing

---

[6] Petitioner instead relies on Eighth Circuit cases that held that a state appellate court's plain error review of an unpreserved claim was sufficient to overcome procedural default. See, e.g., Bannister v. Armontrout, 4 F.3d 1434, 1445 (8th Cir. 1993) (holding that "because the Missouri Supreme Court had conducted plain error review, 'no procedural defect exists to bar federal review.'"). Plaintiff's reliance on this argument is misplaced. First, in 2015, the Eighth Circuit resolved an intra-circuit split and held that a state court's plain error review does not lift the procedural bar to permit federal habeas review. Clark, 780 F.3d at 876. Furthermore, the Missouri Court of Appeals declined to review petitioner's claims for plain error. [Doc. # 21-4 at 3-4].

11

judge and given such weight as appears in his discretion to be merited. Such information does not violate due process requirements."); Williams v. New York, 337 U.S. 241, 250-51 (1949) (stating that the "age-old practice of seeking information from out-of-court sources to guide [sentencing courts'] judgment toward a more enlightened and just sentence" does not violate due process). Finally, even if petitioner could plausibly argue that the admission of this testimony was improper, his claim fails because the court "did not give weight to the hearsay evidence presented by through the police officers" in determining the sentence. [Doc. # 21-5 at 52].

In Ground 2, petitioner challenges trail counsel's failure to object to the admission of the police officers' testimony at sentencing. Although he raised this claim in his post-conviction motion, Doc. # 21-5 at 23, he failed to raise it on appeal of the denial of post-conviction relief, Doc. # 21-7 at 25. As a result, the claim presented in Ground 2 is procedurally defaulted. See Arnold v. Dormire, 675 F.3d 1082, 1085, 1086 (8th Cir. 2012) (claims not presented on appeal from denial of post-conviction relief procedurally defaulted). Again, petitioner does not argue that he can satisfy either exception to the procedural bar. Even if the claim were properly preserved, however, petitioner is not entitled to relief because the sentencing court (1) had discretion to receive the testimony and (2) did not consider the testimony in determining petitioner's sentence. Thus, counsel's failure to object was neither ineffective nor prejudicial. Petitioner is not entitled to relief on the claims presented in Grounds 1 and 2.

## B. Ground 3: Lesser-Included Offense Instruction

In Ground 3, petitioner argues that trial counsel should have requested a jury instruction on the lesser-included offense of stealing. This claim was properly presented to the post-conviction court and the Missouri Court of Appeals.

At trial, petitioner testified that he did not know that the victim's cellphones were in his car and denied using the knife to prevent her from recovering her property. When asked at the post-conviction hearing why he did not ask for an instruction on stealing, trial counsel testified that the defense strategy was innocence. [Doc. # 21-6 at 7] ("He was defending himself, she got out of the car, he took off, he didn't even have knowledge that those items were still in the car, so he couldn't have done a robbery . . . [or] stealing if he did not knowingly take her property."). Defense counsel stated that he was "going for a full-out acquittal on all the charges." Id. at 8. The post-conviction court denied petitioner's claim. [Doc. # 21-5 at 10].

The Missouri Court of Appeals applied the Strickland standard to petitioner's claim. As the court noted, "[a]n objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." [Doc. # 21-9 at 7]. The decision not to submit an instruction on a lesser-included offense is a "tactical decision usually based on the belief — often a reasonable one — that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted." Id. at 7-8 (quoting Oplinger v. State, 350 S.W. 3d 474, 477 (Mo. Ct. App. 2011). Here, in order to find petitioner guilty of first-degree robbery, the jury had to find beyond a reasonable doubt that he threatened the use of force or displayed a weapon when he took T.R.'s property. If the jury had believed petitioner's testimony that he did not know her cellphones were in his car when he drove away, it would have acquitted him of first-degree robbery and an instruction for stealing would have been superfluous. Because "[c]ounsel had no duty to request an instruction that would undermine his entire theory of the case presented at trial," counsel was not "ineffective for seeking to employ the best defense for his client by not offering the jury a middle ground for

13

conviction, . . . the lesser-included offense instruction for stealing." Id. at 8-9 (quoting McKee v. State, 336 S.W.3d 151, 154 (Mo. Ct. App. 2011)).

Petitioner argues that the decision of the Missouri Court of Appeals is contrary to established Federal law, thus entitling him to relief under § 2254(d)(1). [Doc. # 14 at 34-35]. In particular, he asserts that the Supreme Court has held that a defendant is entitled to a lesser-included offense instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." The case petitioner relies on, Keeble v. United States, 412 U.S. 205, 208 (1973), addressed a requirement established by the Federal Rules of Criminal Procedure, not the United States Constitution. Id. (citing Fed.R.Crim.P. 31(c)). And, Keeble provides no support for any contention that trial counsel was constitutionally required to ask the court to instruct the jury on stealing when his strategy depended on the jury believing that petitioner was innocent.

Petitioner has not established that he is entitled to relief under the "doubly deferential" standard that applies to ineffective-assistance claims. Titlow, 571 U.S. at 15. First, he has not met his burden to show that trial counsel's strategic decision was deficient. Second, he has not shown that the decision of the Missouri court was contrary to, or an unreasonable application of, Strickland or that the court unreasonably applied Strickland to the facts in this case.

Petitioner's claim for relief in Ground 3 will be denied.

### C. Grounds 4 and 6: Double Jeopardy Claims

In Ground 4, petitioner asserts that he received ineffective assistance because trial counsel failed to argue that his convictions for multiple offenses violated his protections against double jeopardy. In Ground 6, he asserts that counsel failed to argue that his convictions for first-degree robbery in Count V and armed criminal action in Count VI violated Missouri's

14

statute governing conviction for multiple offenses, § 556.041. Petitioner did not raise these claims in his post-conviction proceedings and so presents them here as challenges to the performance of his post-conviction counsel in an effort to invoke the protection of Martinez to avoid procedural default. As discussed below, however, his assertion that he was subjected to improper cumulative punishment in violation of constitutional and state statutory protections is incorrect. Accordingly, his ineffective-assistance claims necessarily fail, regardless of his procedural default.

In his statement of his claim for relief in Ground 4, petitioner asserts that he was placed in double jeopardy when he was convicted and sentenced for forcible rape and the other additional offenses. [Doc. # 1 at 11, Doc. #14 at 44]. Among its protections, the Fifth Amendment's Double Jeopardy Clause protects a criminal defendant against cumulative punishment. See Dodge v. Robinson, 625 F.3d 1014, 1017 (8th Cir. 2010) (discussing "three protections" under double jeopardy clause, including protection against cumulative punishment). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). Thus, no double jeopardy violation occurs "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct." Id. at 368-69. Where the statutes do not specifically authorize cumulative punishment, "courts generally apply the rule of construction announced in Blockburger v. United States, 284 U.S. 299 (1932)." Dodge, 625 F.3d at 1018. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id.

15

(quoting Blockburger, 284 U.S. at 304). Here, plaintiff was convicted of forcible rape, forcible sodomy, and first-degree robbery. Each statute requires proof of a separate fact not required by the others: forcible rape requires proof of intercourse, see § 566.030.1; forcible sodomy requires proof of "deviate sexual intercourse," see § 566.060.1, which is "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person," § 566.010(3); and first-degree robbery requires forcible stealing of property, § 570.023.1. Petitioner's convictions of these offenses did not violate the Double Jeopardy Clause.

To the extent that petitioner claims that his convictions for armed criminal action violate double jeopardy protections, this argument fails. The United States Supreme Court examined Missouri's armed criminal action statute, § 571.015, and held that "the Missouri legislature . . . expressed its clear intent that a defendant be subject to conviction and sentence under the armed criminal action statute in addition to any conviction and sentence for the underlying felony." Hunter, 459 U.S. at 363-64;[7] see also State v. Blackman, 968 S.W.2d 138, 140 (Mo. 1998) ("Because [Missouri's Armed Criminal Action] statute expressly states punishment for armed criminal action is 'in addition to' other punishment defendant may receive for the felony committed, it clearly establishes the legislature's intent to provide for successive punishment for those crimes."); State v. Hyman, 37 S.W.3d 384, 391 (Mo. Ct. App. 2001) ("[W]hatever the underlying felony may be, armed criminal action carries a separate, distinct, and additional punishment.").

As the foregoing analysis establishes, petitioner was not subjected to double jeopardy. Thus, he cannot establish that his lawyer provided ineffective assistance. See Brooks v. Wallace, No. 4:16CV208 JMB, 2018 WL 999971, at *7 (E.D. Mo. Feb. 21, 2018) (petitioner not entitled

---

[7] Petitioner baldly asserts that the holding in Missouri v. Hunter is unconstitutional. [Doc. # 1 at 10]. Hunter remains binding Supreme Court precedent unless and until the United States Supreme Court agrees with him.

to habeas relief on claim that counsel was ineffective for failing to raise double jeopardy challenge to armed criminal action conviction); see also Williams v. Wallace, No. 4:15CV534 AGF, 2017 WL 6731722, at *5 (E.D. Mo. Dec. 29, 2017) (no double jeopardy violation arises from Missouri convictions for both underlying offense and armed criminal action); Jones–El v. Wallace, No. 4:13CV85 SPM, 2016 WL 1258632, at *6 (E.D. Mo. Mar. 31, 2016) (same). Petitioner's related assertion in Ground 6 that his convictions for first-degree robbery and armed criminal action violate Missouri's statute against cumulative punishment, § 566.041, is also unavailing. This statute does not apply where, as here, the specific statutes governing punishment for the offenses at issue make it clear that the legislature intended cumulative punishment. Id. Again, trial counsel was not ineffective for failing to raise a meritless claim.

Petitioner is not entitled to relief on the ineffective-assistance claims asserted in Grounds 4 and 6.

### D.     Ground 5:  Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel should have challenged the sufficiency of the evidence for his convictions.[8] Respondent argues that the claim is procedurally defaulted because petitioner did not raise it in his pro se or amended Rule 29.15 motions for post-conviction relief. In addition, respondent asserts, the claim is meritless. The Court agrees that petitioner cannot establish that a challenge to the sufficiency of the evidence would have prevailed on appeal and thus he cannot establish that he was prejudiced by counsel's failure to raise the point.

Under Missouri law,

> To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does

---

[8] Although petitioner's trial counsel raised this argument in his motion for a new trial, [Doc. #21-1 at 98], the claim was not raised on direct appeal.

> not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences. This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

State v. Zetina-Torres, 482 S.W.3d 801, 806 (Mo. 2016) (internal quotations, alterations, and citations omitted). Generally, a witness's testimony is sufficient evidence to sustain a conviction, and the trier of fact is left to determine credibility issues. State v. Porter, 439 S.W.3d 208, 211 (Mo. 2014).

Here, the victim testified that petitioner (1) displayed a knife, (2) demanded that she perform oral sex, (3) had intercourse with her while holding the knife to her throat; and (4) slashed at her with the knife when she tried to retrieve her property. Petitioner does not dispute that T.R.'s testimony provided evidence to support the elements of each offense. Rather, he argues "that no rational trier of fact . . . 'could have found the essential elements of the crime beyond a reasonable doubt based only on the victim's bare testimony.'" [Doc. # 14 at 49]. Petitioner's assertion that the prosecution is required to provide evidence beyond a victim's testimony is incorrect. "The testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent." State v. Bell, 936 S.W.2d 204, 207 (Mo. Ct. App. 1996). Any inconsistencies are for the jury to resolve, and contradictions in a witness's testimony do not inherently make evidence insubstantial. Id. And, in this case, the prosecution presented additional evidence beyond the victim's testimony. For example, Officer Frichtl testified that T.R made a spontaneous statement that she had been raped. Both Officer Frichtl

and Nurse Howard described T.R. as very upset, which is consistent with someone who has undergone a traumatic experience.

Petitioner cannot establish that a challenge to the sufficiency of the evidence would have succeeded on appeal and thus cannot establish that he was prejudiced by appellate counsel's failure to raise such a claim. His claim in Ground 5 will be denied.

### E. Ground 7: Ineffective Assistance of Counsel — *Brady* Violations

Petitioner argues that counsel was ineffective for failing to object to the prosecutor's failure to disclose the criminal records of its endorsed witnesses, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and Missouri Sup. Ct. R. 25.03. As respondent notes, this claim was not presented in post-conviction proceedings and is procedurally defaulted. Furthermore, and as petitioner acknowledges, there is no evidence that any of the witnesses had criminal records to disclose. Thus, even if the claim were properly before the Court for habeas review, petitioner cannot show that he was prejudiced by counsel's failure to object at trial. Ground 7 will be denied.

### F. Ground 8: Ineffective Assistance of Counsel — Jury Instruction

Petitioner argues that counsel was ineffective for failing to request an instruction on mistake of fact concerning consent. Again, this claim was not presented in post-conviction proceedings and is procedurally defaulted. Even if properly presented, however, petitioner has again failed to show that he was prejudiced by counsel's performance because the jury was adequately instructed on the issue of consent. The instructions for forcible rape and forcible sodomy both required the jury to find that the State had proven, beyond a reasonable doubt, that the charged acts occurred by the use of "forcible compulsion." [Doc. # 21-1 at 56, 58]. The jury was also instructed that forcible compulsion means "physical force that overcomes reasonable

19

resistance, or a threat, express or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping of herself. " Id. at 62. "Those instructions clearly and unmistakably submit the issue of the victim's consent to the jury." Pruitt v. State, 792 S.W.2d 641, 645 (Mo. Ct. App. 1990) (citing instructions for forcible rape and forcible sodomy). Furthermore, the jury heard petitioner's testimony that he had a consensual sexual encounter with T.R. and thus was fully aware of the issue of consent. Petitioner has failed to establish that the outcome of his trial would have been different if the jury had received an additional instruction on mistake of fact regarding consent and thus he cannot show that he was prejudiced by counsel's performance. Petitioner's claim for relief in Ground 8 will be denied.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Jerry Wise for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. # 1] is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2018.